IN the Matter of the ESTATE OF Marvin E. SCHULDT, a/k/a Marvin E. Schuldt, Deceased.

Nos. 16537, 16546.

Supreme Court of South Dakota.

Considered on Briefs Oct. 16, 1989.

Decided June 6, 1990.

Walter C. Miller, of Miller & Bucher, Plankinton, (Steven J. Bucher of Miller & Bucher, on the brief), for appellant Alton Schuldt.

John L. Morgan of Morgan, Theeler, Cogley & Padrnos, Mitchell, for appellees B.P.O. Elks Lodge of Mitchell, Moose Lodge No. 875 of Mitchell, Supreme Lodge of the World, Loyal Order of the Moose for and on behalf of Child City and Moose Haven, sponsored by the Loyal Order of the Moose, St. Joseph Hosp. of Mitchell, and Methodist Hosp. of Mitchell, S.D.

EVANS, Circuit Judge.

Alton Schuldt (executor) appeals from a final decree which affirmed, in part, objections made to the Final Report and Account (final report) in the Marvin E. Schuldt estate and which required the estate to pay attorney's fees to the residuary legatees and devisees (beneficiaries).[1]

### BACKGROUND AND FACTS

This case was before us on objections made to a previous final account. *Matter of Estate of Schuldt*, 428 N.W.2d 251 (S.D.

---

1. Beneficiaries are primarily charitable and service organizations. Six organizations are represented on this appeal. While the others are not named parties, they are also affected by this decision.

1988) (*Schuldt I*). In *Schuldt I*, we upheld the claimed executor's fees and attorney's fees, but disallowed a brokerage fee paid to executor's attorney (attorney). Following this decision attorney immediately refunded the $5,923.84 brokerage fee and sales tax to the estate. Attorney also paid the estate $450.80, the interest actually earned on the brokerage fee since disbursement from the estate.[2]

Executor filed a second final report and account. Beneficiaries objected to the report as follows:

(1) Payments for attorney's fees incurred for the first appeal in the amount of $2,092.49 and executor expenses of $477.50 should be disallowed and returned to the estate with interest from the date of disbursement at the rate of 15 percent per annum;

(2) Additional requests for reimbursement of attorney's fees and executor expenses incurred for the first appeal in the respective amounts of $2,914.24 and $211.00 should be disallowed;

(3) The proper rate of interest on the disallowed brokerage fee should be 15 percent per annum rather than 5.25 percent.

They requested that the estate be required to pay their attorney fees incurred in recovering the brokerage fee and other amounts.

The circuit court sustained the objections to the attorney's fees and executor expenses. It allowed the payment of interest at 5.25 percent rather than 15 percent. It also granted beneficiaries' motion for attorney's fees.

### ISSUE ONE

DID THE CIRCUIT COURT ERR IN DISALLOWING EXECUTOR EXPENSES?

SDCL 30-25-6 provides:

The executor or administrator shall be allowed all necessary expenses in the care, management, and settlement of the estate ...

The final report shows a list of disbursements which includes, "09–08–87 Alton Schuldt—executor's expenses—telephone, travel, etc. $477.50." Additionally, the final report sought approval to pay executor the following expenses:

| | |
|---|---|
| 460 miles at .20/mile | $ 92.00 |
| meals while traveling | 28.00 |
| telephone expenses | 26.00 |
| lodging at Vermillion | 60.00 |
| postage | 5.00 |
| TOTAL | $211.00 |

The final report describes these expenses as miles to and from executor's home in Stickney, South Dakota, to the estate attorney's office for various conferences, and to and from Vermillion, South Dakota, to be present at oral argument.

The circuit court disallowed the $477.50 because there was no itemization and no further proof was presented. The circuit court refused to allow the $211.00 because there was no showing why executor's presence at oral argument was necessary.

At the hearing on the final account no witnesses testified and no other evidence was presented. Counsel for each party did present oral argument, but no reason was ever suggested why executor's presence at oral argument was necessary. While an executor's presence may be needed to assist counsel at oral argument in some cases, there is no showing it was necessary here. While some other claimed expenses may have been necessary, we are unable to determine from the information presented which expense it might be. We affirm the circuit court's disallowance of these executor expenses.[3]

### ISSUE TWO

DID THE CIRCUIT COURT ERR IN DISALLOWING ATTORNEY'S FEES RELATING TO THE FIRST APPEAL CHALLENGING THE FIRST ACCOUNT?

An executor, in his final account and settlement, is allowed all necessary

---

**2.** The interest was earned at a rate of 5.25% per annum, the average passbook savings rate. Attorney calls it an escrow account but the record does not provide any further information about the account.

**3.** In the first accounting executor expenses of $566.30 were approved.

expenses in the care, management, and settlement of the estate. Although attorney's fees are a matter of contract between the executor and the attorney, the executor is unquestionably entitled to reimbursement for attorney's fees for services rendered in the administration of his trust and in litigation for the benefit of the decedent, if conducted in good faith and with reasonable care and prudence. *Matter of the Estate of Lingscheit*, 387 N.W.2d 738 (S.D. 1986).

The final report included the attorney's fee statement showing the general work performed and the date of the work, hours expended, charges made and expenses incurred. We must determine whether the services were rendered for the benefit of the estate or whether the services advanced the executor or attorney's interest.

The appeal in *Schuldt I* involved three issues. We affirmed an allowance of executor's fees and allowance of attorney's fees. If these had been the only issues on appeal, we would likely find attorney's employment to be for the benefit of the estate. The executor is charged with the responsibility of paying lawful claims and debts of the estate and attorney's services are necessary in determining proper payment and litigation. We look to the services provided and not just by whom the attorney was employed.

The main issue in the first appeal, however, was whether an attorney representing an executor could charge an additional fee for acting as a broker. The other two issues related to that issue. In *Schuldt I* we did not hold that attorney's conduct was purposefully deceptive or intentionally unethical in view of the lack of existing authority on the topic. We did hold, however, that the arrangement was not permitted under the rules of ethics. Pursuing a claim or defense of an action which is not permitted is not considered a benefit to the estate.

Executor argues that the attorney's fees should be allowed because the circuit court entered an order authorizing him to employ an attorney for extraordinary services performed and contemplated in the future in the event of an appeal. Executor claims that beneficiaries failed to object at the hearing at which that order was entered. The notice of hearing on that petition was only given to beneficiaries and not to their attorney. Executor's counsel was aware that beneficiaries were represented by counsel.

Beneficiaries claim service of the notice of hearing was insufficient. They rely on SDCL 15-6-5(b) which provides, in part:

> Whenever under this chapter service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party himself is ordered by the court.

The appropriate notice statute, however, is SDCL 30-1-12 which provides, in part:

> If notice of a hearing on a petition in probate or guardianship is required, except for specific notice requirements as otherwise required, the petitioner shall give notice of the time and place of hearing of the petition to any interested party or to his attorney if he has appeared by attorney.

After an attorney appears for a party he expects to receive notice of further hearings. Such notice is mandatory for proceedings to which SDCL 15-6-5(b) applies. Notice is commonly given to the attorney for an interested party in proceedings under SDCL 30-1-12. Interested parties often assume their attorney will receive notice. Attorney for beneficiaries was not aware of this hearing until after an order approving extraordinary services had been entered. Thus, the late objection to the authorization of future attorney's fees is allowed. In addition, we note that in *Schuldt I* attorney conceded that his fee arrangement with the executor was oral and this percentage fee required him to perform all the legal services required to close the affairs of the estate.

We affirm the circuit court's denial of executor's additional attorney's fees for the appeal in *Schuldt I*.

## ISSUE THREE

### DID THE CIRCUIT COURT ERR IN DETERMINING INTEREST RATES ON DISALLOWED FEES AND EXPENSES?

SDCL 54-3-5 states:

Unless there is an express contract in writing fixing a different rate, interest is payable on all moneys at the Category C rate of interest [15 percent per annum] as established in § 54-3-16 after they become due on any instrument of writing, and on moneys lent, or due on any settlement of accounts, from the day on which the balance is ascertained, and on moneys received to the use of another and detained from him.

■ A settlement of an account occurs where two or more persons who have had business transactions agree upon a balance between them. *Rose v. Bradley*, 91 Wis. 619, 65 N.W. 509 (1895). A settlement of an account can occur where a debtor is informed of an amount owing and makes payment of that amount. A settlement of an account could take place by the court determining an amount due at a hearing on a final account.

■ If money is received by mistake by one that does not know he has been overpaid, he has no duty to return the money or pay interest until he is appraised of that fact. If money is acquired wrongfully in the first instance, one is liable for interest for as long as the wrongful detention continues, whether demand for payment has been made or not. If money is paid by mutual mistake of fact, one is not liable for interest until the mistake is discovered and demand for payment is made. *Bunkers v. Guernsey*, 41 S.D. 381, 170 N.W. 632 (1919). If an amount paid on a settlement of account or an account due is improperly paid, it may be treated as "moneys lent," as that term is used in SDCL 54-3-5. An executor making payments without court approval does so at his own peril. Here executor paid himself sums which were eventually disallowed and repayment was required. In essence, executor made a loan of money to himself. The balance was ascertained as of the time of the payment. The circuit court correctly required repayment of that money with interest computed at 15 percent per annum.

■ In an administration of an estate attorney's fees are not awarded to an attorney. A payment is made to the executor or administrator to reimburse him for necessary expenses that he has incurred in retaining the services of an attorney. While executor did obtain a court order to retain an attorney and pay him for work on the appeal in *Schuldt I*, that order was ineffective because of lack of adequate notice. The $2,092.49 was paid without court approval. Being treated like "moneys lent" we again affirm the circuit court's determination of interest.

■ As to the brokerage fees, the circuit court determined that SDCL 54-3-5 did apply. It determined that the settlement of the account occurred when *Schuldt I* was decided and that this was the date when any interest would start to run. Since the estate was reimbursed at the same time, the circuit court determined that no interest was due under that statute. The circuit court did approve the payment of interest actually earned on the money (which was also the same rate earned on other estate money) on the theory that not to do so would unjustly enrich attorney.

In *Schuldt I* we held the brokerage fee payment to an attorney improper. It was wrongful from the date of payment. It was on that date that executor lent himself money and on that date the balance owing can be ascertained. The interest should be computed at the rate of 15 percent per annum from the date executor lent himself money from estate funds to the date of reimbursement to the estate.

## ISSUE FOUR

### DID THE CIRCUIT COURT ERR IN ALLOWING THE ATTORNEY FEES FOR OBJECTORS AFTER AN APPEAL HELPED BRING A SUBSTANTIAL AMOUNT OF MONEY BACK INTO THE ESTATE?

■ The circuit court allowed beneficiaries to recover attorney fees from the

estate. The basis of the award was the benefit to the estate that resulted from the appeal in *Schuldt I.* The standard arises from *In re Engebretson's Estate,* 68 S.D. 255, 1 N.W.2d 351 (1941). The language first used in that case was:

> It has been held, as a general rule, that an allowance may be made out of the estate of a deceased person for the services of attorneys for beneficiaries where those services were beneficial to the estate.

*Engebretson's, supra,* 68 S.D. at 260, 1 N.W.2d at 353. There was no secondary requirement needed to allow attorney fees for beneficiaries. The benefit to the estate was the only requirement necessary.

Executor argues that the doctrine is much more structured. The executor argues that *Engebretson, supra,* adopted the holding of *Becht v. Miller,* 279 Mich. 629, 273 N.W. 294 (1937), in its entirety. The holding in that decision was:

> A doctrine which permits a decedent's estate to be so charged, should, however, in our opinion, be applied with caution and its operation limited to those cases in which the services performed have not only been distinctly beneficial to the estate, but become necessary by reason of laches, negligence, or fraud of the legal representative of the estate.

273 N.W. at 298. We limited this decision in *In re Bamberger's Estate,* 79 S.D. 85, 108 N.W.2d 50 (1961) by stating that "we were but intending to catalogue types of conduct of an executor which would in fact deprive the estate of effective representation." *Bamberger, supra,* 79 S.D. at 89, 108 N.W.2d at 53. This statement lessens the importance of executor's argument. When an executor is guilty of laches, negligence, or fraud, attorney's fees for the

beneficiaries will be allowed. But, this court did not limit allowance of attorney's fees to those situations, nor does it impose such a requirement today.

In *Bamberger, supra,* it was the executor's refusal to take action to assert a claim which required another heir to obtain counsel to pursue the interests of the estate. In this case it is executor's actions that required beneficiaries to hire counsel to pursue their interests. Beneficiaries' attorney's fee arrangement was for ⅓ of the amount recovered. Through beneficiaries efforts $9,433.92 was returned to the estate. The *Schuldt I* appeal allowed executor $424.00 additional attorney fees. This sum should be subtracted from the amount recovered to determine the benefit to the estate. A fee of $3,003.30 is approved.[4]

This case is remanded to the circuit court for determination of additional interest and for allowance of any further attorney's fees to beneficiaries that may be based upon the award of such further interest.

HENDERSON, Acting C.J., MILLER, J., and GILBERTSON, and MARTIN, Circuit Judges, concur.

EVANS, Circuit Judge, for WUEST, C.J., disqualified.

GILBERTSON, Circuit Judge, for MORGAN, J., disqualified.

MARTIN, Circuit Judge, for SABERS, J., disqualified.

---

4. The money which was added back to the estate is represented by the following:

| | |
|---|---|
| Recovery of brokerage fees and taxes | $5,923.84 |
| Recovery of interest earned on above | 450.80 |
| Recovery of attorney fees paid the attorney for the estate for appeal | 2,092.49 |
| Recovery of executor expenses paid relating to the appeal | 477.50 |
| Recovery of interest charged on the disallowed attorney fees and executor expenses at 15% per annum | 489.29 |
| | $9,433.92 |

$9,433.92 multiplied by ⅓ = $3,144.64

$9,433.92 minus $424 = $9,009.92

$9,009.92 divided by 3 = $3,003.30