#24072-a-JKM

**2007 SD 46**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ESTATE OF BRIAN LEE GUSTAFSON, Deceased.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE KATHLEEN K. CALDWELL
Judge

\* \* \* \*

SHAWN M. NICHOLS of
Cadwell, Sanford, Deibert &
 Garry, LLP                     Attorneys for appellant
Sioux Falls, South Dakota       Suzanne Gustafson.

THOMAS E. ALBERTS
Avon, South Dakota

BRADLEY D. KERNER of
Kerner Law Office                   Attorneys for appellees
Armour, South Dakota         Jan Klahs and Steve Gustafson.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 19, 2007

OPINION FILED **05/02/07**

MEIERHENRY, Justice

[¶1.] After Brian Lee Gustafson (Decedent) died, his siblings filed a Petition for Adjudication of Intestacy, Determination of Heirs, and Appointment of Personal Representative (Petition of Intestacy). Decedent's former wife, Suzanne Gustafson (Suzanne), objected and argued that a copy of Decedent's will should defeat the claim of intestacy. The trial court granted the petition and denied Suzanne's objection. Suzanne appeals and we affirm.

## FACTS

[¶2.] Decedent died July 20, 2005, in his fifth wheel trailer near Phoenix, Arizona at the age of sixty-one. After a career in education, Decedent retired two and one half years prior to his death. Decedent had been married twice during his lifetime but was single at the time of his death. In the last few years of his life, Decedent had been aloof and distant from his friends and family.

[¶3.] After Decedent's death, his sister Jan Klahs (Klahs) found a copy of an unsigned will executed in 1985, among his personal effects, all of which he kept in his fifth wheel trailer. Klahs gave the copy to her attorney in South Dakota, who continued looking for the original, without success. The copy indicated that Decedent had executed a will on July 3, 1985, in Des Moines, Iowa, which named Suzanne Raisch as the sole beneficiary. Suzanne Raisch became Suzanne Gustafson upon her marriage to Decedent in April of 1986. The couple divorced on August 10, 2000, and had little contact after the divorce. Klahs' attorney contacted Suzanne about the 1985 will, and Suzanne told him that she was not aware of its existence.

[¶4.]     The main issue before the trial court was whether Decedent intended to revoke the 1985 will. At the hearing on the matter, Klahs testified that in 2004, she specifically asked Decedent whether he had a will and he told her that he did not. Suzanne testified that she and Decedent had discussed making a will when they were married but never actively pursued the idea. Suzanne claimed that Decedent had contacted her after their divorce and told her that he still wanted to provide for her and her children.

[¶5.]     After hearing all of the evidence, the trial court concluded that the original will had not been found despite a "careful and exhaustive search." The trial court also found that Suzanne had not presented sufficient evidence to rebut the presumption that Decedent had revoked the lost original will. Accordingly, the trial court granted the Petition of Intestacy pursuant to SDCL 29A-3-402(d).[1]

[¶6.]     Suzanne appeals and raises the following issue.

### ISSUE

Whether the trial court erred in granting the Petition of Intestacy based on the finding that Suzanne had not presented sufficient evidence to rebut the presumption that Decedent had revoked the original will.

### STANDARD OF REVIEW

[¶7.]     "We review a trial court's finding that a lost will has been revoked under the clearly erroneous standard." *In re* Estate of Long, 1998 SD 15, ¶9, 575 NW2d 254, 255 (quoting *In re* Estate of Modde, 323 NW2d 895, 898 (SD 1982)).

---

1.  The trial court did not reach the issue addressed by the concurrence of whether the will was automatically revoked as a result of Decedent and Suzanne's divorce because the trial court concluded that Suzanne failed to overcome the revocation presumption in SDCL 29-3-402(d). Consequently, that issue was not raised on appeal to this Court.

> Under the clearly erroneous standard, the question for this Court is not whether we would have made the same findings that the trial court did, but, whether on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed. That this Court may have found the facts differently had we heard the testimony is no warrant for us to substitute our judgment for the trial court's carefully considered findings.

*Id*. (quoting Guardianship and Conservatorship of Lanning, 1997 SD 81, ¶9, 565 NW2d 794, 796).

## ANALYSIS

[¶8.]      South Dakota law allows a copy of a will to be admitted to probate if "at least one credible witness" can testify that "the copy is a true copy of the original." SDCL 29A-3-402(d). Additionally, the law requires that the court must be "reasonably satisfied that the will was not revoked by the testator." *Id.* The statute provides in relevant part as follows:

> If the original will, or certified copy of the will as probated in another jurisdiction, is not available, the contents of the will can be proved by a copy of the will and the testimony or affidavit of at least one credible witness that the copy is a true copy of the original, and the will may be admitted to probate if the court is reasonably satisfied that the will was not revoked by the testator.

*Id*.

[¶9.]      In *Estate of Long,* we recognized that "the presumption that a lost will has been revoked" was codified in SDCL 29A-3-402(d). 1998 SD 15, ¶14, 575 NW2d at 256 (stating that the presumption is evident by the express language of SDCL 29A-3-402(d)). The presumption arises when a careful and exhaustive search fails to produce the original will. *Estate of Modde,* 323 NW2d at 898. The presumption may be rebutted by evidence, circumstantial or otherwise, which "reasonably

satisfie[s]" the trial court that the will was not revoked. SDCL 29A-3-402(d). The "reasonably satisfied" standard of proof is low and requires a "minimal level of certainty." State v. Bailey, 464 NW2d 626, 628 (SD 1991) (discussing reasonably satisfied standard of proof in the context of probation). Consequently, when the original will was not located, Suzanne had the burden of overcoming the presumption that the Decedent had revoked it.

[¶10.] Suzanne argues that the presumption should not apply because Klahs failed to conduct a "careful and exhaustive search" for the original will. Suzanne contends that the search was not exhaustive because Klahs failed to contact any of the four witnesses to the execution of the original will, who may have been able to provide knowledge of the will's drafter or its possible location. Klahs testified that she searched through all of Decedent's belongings and failed to find anything but the copy of the 1985 will. She promptly provided the copy to her attorney, who was unable to locate the original. The trial court was in the best position to judge the credibility of the witnesses. Edinger v. Edinger, 2006 SD 103, ¶15, 724 NW2d 852, 854. Thus, we cannot say that the trial court's finding that Klahs conducted a careful and exhaustive search was clearly erroneous.

[¶11.] Suzanne also argues that the trial court erred when it concluded that she failed to rebut the presumption that the lost will had been revoked. Suzanne argues that the trial court should not have granted the Petition for Intestacy because there was no evidence that Decedent ever intended to revoke the 1985 will. Suzanne, however, misses the effect of a legal presumption. The effect of a presumption of law is "to invoke a rule of law compelling the [factfinder] to reach

the conclusion in the absence of evidence to the contrary from the opponent." *In re* Estate of Duebendorfer, 2006 SD 79, ¶45, 721 NW2d 438, 450 (Zinter, J., concurring) (additional citations omitted). We explained the burden of proof needed to overcome the presumption as follows:

> [A] presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

*Id.* (quoting SDCL 19-11-1). While the presumption did not alter the ultimate burden of persuasion, it did oblige Suzanne to come forward with evidence to rebut the presumption. She provided little evidence of rebuttal.

[¶12.]     First, Suzanne admitted that she was not aware that Decedent had executed the 1985 will. She claimed they had talked about executing a will during the marriage but had not done so. Second, Suzanne testified that she had only spoken to the Decedent once since their divorce five years ago. Although Suzanne claimed that shortly after their divorce Decedent told her he wanted to provide for her children, the trial court noted that the conversation contradicted Suzanne's argument because the 1985 will only named Suzanne as the sole beneficiary. Thus, if Decedent had wanted to provide for Suzanne's children, he would have had to revoke or amend the 1985 will.

[¶13.]     "The credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence must be determined by the trial court, and we give due regard to the trial court's opportunity to observe the witnesses and examine the evidence." *In re* Estate of Schnell, 2004 SD 80, ¶8, 683 NW2d 415, 418.

Suzanne had the burden to overcome the presumption that the will had been revoked. *Estate of Long*, 1998 SD 15, ¶15, 575 NW2d at 257. Considering the limited evidence Suzanne offered, the trial court's finding that Suzanne failed to overcome the presumption that the lost original will was revoked was not clearly erroneous.

[¶14.] Affirmed.

[¶15.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶16.] SABERS, Justice, concurs specially.


SABERS, Justice (concurring specially).

[¶17.] I write specially to point out that the issue whether the trial court erred in determining the will was revoked is moot. SDCL 29A-2-804 indicates that any property dispositions in the 1985 will from Brian to Suzanne were revoked due to the subsequent divorce. The statute provides in relevant part:

> (b) Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage:
>
> (1) Revokes any revocable (i) disposition or appointment of property made by a divorced individual to a former spouse in a governing instrument . . . .

SDCL 29A-2-804.

[¶18.] Therefore, if the will was revoked, Brian and Jan would take all through the rules of intestacy. If the will was not revoked, then they would take as

the sole contingent beneficiaries of the will because SDCL 29A-2-804 revokes any property dispositions to Suzanne in the will.