#27254, #27261-a-GAS

**2015 S.D. 47**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

ESTATE OF DELBERT ANDREW DEUTSCH,
deceased.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
MARSHALL COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RICHARD A. SOMMERS
Judge

* * * *

ROY A. WISE
ZACHARY W. PETERSON of
Richardson, Wyly, Wise, Sauck
 & Hieb, LLP
Aberdeen, South Dakota

Attorneys for respondent and
appellant Marcelina M.
Deutsch.


GORDON P. NIELSEN
DAVID A. GEYER of
Delaney, Nielsen & Sannes, P.C.
Sisseton, South Dakota

Attorneys for petitioners and
appellees Hillary Schuster aka
Larry Schuster and Ronald
Jaspers.

* * * *

CONSIDERED ON BRIEFS
ON MAY 26, 2015
OPINION FILED **06/17/15**

#27254, #27261

SEVERSON, Justice

[¶1.]        Delbert Deutsch's nephews petitioned for formal probate of a copy of Deutsch's 2001 will when no original was found despite a careful and exhaustive search by Deutsch's widow Marcelina and her son.  The copy was admitted to probate after the court was reasonably satisfied that Deutsch had not revoked the will.  Marcelina appeals.  We affirm.

## Background

[¶2.]        Delbert Deutsch died on August 23, 2012.  Marcelina and her son found a copy of a 2001 will on top of Delbert's desk among other papers he considered important.  The circuit court found that Marcelina and her son made a careful and exhaustive search but could not find an original will.  Marcelina filed an application for informal intestate probate and appointment of personal representative on April 3, 2013.  She filed a copy of the 2001 will with the application.  On August 28, 2013, Hillary Schuster ("Larry") and Ronald Jaspers ("Ronald"), Delbert's nephews, filed a petition for formal probate of the copy of the will and for determination of heirs.  The court held a trial on April 15, 2014 to determine whether to admit the copy of the 2001 will to probate.

[¶3.]        The attorney who prepared the will died in 2008, and the attorney's employees testified that they did not know whether the original will was given to Delbert or retained by the attorney.  The attorney's employees explained that the attorney normally would send originals with his clients, but he did keep some originals.

[¶4.] Larry and Ronald each live within a few miles of Delbert and Marcelina's farm, and both would receive real estate under the 2001 will. Delbert gifted Larry six acres of land in 1993. Larry's home is located on the six acres, and he has lived there since approximately 1993. Both nephews testified that they had a close relationship with Delbert that began when they were young. They helped Delbert with farming and Delbert helped them in return. Delbert loaned $5,000, interest-free, to Ronald and gave him other small gifts of money over the years. In 2012, Delbert told Larry that the land surrounding the six acres would be Larry's one day. The land surrounding Larry's home was owned by Delbert and bequeathed to Larry under the 2001 will, along with additional real estate.

[¶5.] Marcelina testified that Delbert did not discuss estate planning with her and she did not know about the existence of the 2001 will. Under the 2001 will, Mario, Marcelina's son from a prior marriage, would only receive Marcelina's share of the estate if she predeceased Mario. Some of the real estate left to Marcelina in the 2001 will was sold by Delbert in 2008. According to Marcelina, an attorney helped with the 2008 sale, and Delbert mentioned that he would need to make an appointment with this attorney to make a will. However, Delbert never scheduled an appointment.

[¶6.] Ultimately, the court determined that it was reasonably satisfied that the lost will was not revoked by Delbert. Marcelina appeals, arguing that the court erred by admitting the copy of the will to probate. Larry and Ronald also appeal. They contend that the circuit court erred by denying their request for reimbursement of attorney's fees.

## Standard of Review

[¶7.]      The parties dispute the applicable standard of review. Marcelina contends that the court's "misapplication of SDCL 29A-3-402(d) should be reviewed de novo." Although Marcelina attempts to present this case as one involving statutory interpretation and application, her issue on appeal questions whether the court erred in concluding that the will was not revoked. We review the circuit court's determination that a lost will was not revoked under the clearly erroneous standard. *In re Estate of Gustafson*, 2007 S.D. 46, ¶ 7, 731 N.W.2d 922, 925.

## Analysis

[¶8.]      "[W]hen a careful and exhaustive search fails to produce the original will[,]" a presumption arises that the will has been revoked. *Estate of Gustafson*, 2007 S.D. 46, ¶ 9, 731 N.W.2d at 925. Proponents of a lost will have the burden to overcome the presumption that it was revoked. *Id.* A copy of a will may be admitted to probate if "at least one credible witness" can testify that "the copy is a true copy of the original" and if the circuit court is "reasonably satisfied that the will was not revoked by the testator." SDCL 29A-3-402(d); *Estate of Gustafson*, 2007 S.D. 46, ¶ 8, 731 N.W.2d at 925. The statute provides in relevant part:

> If the original will . . . is not available, the contents of the will can be proved by a copy of the will and the testimony or affidavit of at least one credible witness that the copy is a true copy of the original, and the will may be admitted to probate if the court is reasonably satisfied that the will was not revoked by the testator.

SDCL 29A-3-402(d). "The 'reasonably satisfied' standard of proof is low and requires a 'minimal level of certainty.'" *Estate of Gustafson*, 2007 S.D. 46, ¶ 9, 731 N.W.2d at 925 (quoting *State v. Bailey*, 464 N.W.2d 626, 628 (S.D. 1991)).

[¶9.]       Two witnesses testified that the copy presented was a copy of the original will signed by Delbert. The parties are not disputing whether the copy is a true copy; they are only disputing whether the will was revoked. Further, neither party contests the adequacy of the search. The circuit court recognized that a presumption of revocation existed, but concluded that Larry and Ronald overcame the presumption. The court determined that the best evidence to rebut the presumption of revocation was Delbert's "acts and declarations." It found that Delbert had contemplated the property disposition for many years and that his close relationship with his nephews remained the same between the execution of his will and the time of his death. The court further found that Delbert informed Larry as recently as 2012 that Larry would be receiving real estate upon Delbert's death. It also determined that Delbert left the will in a location where he knew it would be found.

[¶10.]       Marcelina states that Larry and Ronald "presented no direct evidence proving that Delbert did not revoke the will." She also contends that the close relationship that Delbert had with his nephews has no bearing on whether Delbert revoked the will; nor does the location of the copy of the will. Additionally, Marcelina points out that the conversations between Delbert and Larry never specifically referenced the 2001 will and that Larry's testimony is unsubstantiated and self-serving. However, "[t]he presumption may be rebutted by evidence, circumstantial or otherwise, which 'reasonably satisfies' the [circuit] court that the will was not revoked." *Estate of Gustafson*, 2007 S.D. 46, ¶ 9, 731 N.W.2d at 925.

[¶11.] It is important to note that "there are no . . . express limitations as to what needs to be proved to rebut the presumption. The only requirement is that, given all the evidence, the [circuit] court must be 'reasonably satisfied' that the will was not revoked." *In re Estate of Long*, 1998 S.D. 15, ¶ 15, 575 N.W.2d 254, 257. Marcelina's arguments relate to the sufficiency of the evidence presented in this case. However, "'[t]he credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence must be determined by the [circuit] court, and we give due regard to the [circuit] court's opportunity to observe the witnesses and examine the evidence.'" *Estate of Gustafson,* 2007 S.D. 46, ¶ 13, 731 N.W.2d at 926 (quoting *In re Estate of Schnell*, 2004 S.D. 80, ¶ 8, 683 N.W.2d 415, 418). The court need only have a minimal level of certainty that the will was not revoked. Delbert's ongoing relationship with his nephews and his conversation with Larry just months before his passing provided the court with that certainty. After review, we cannot say that the court clearly erred in determining that the will had not been revoked. Therefore, we affirm.

*Attorney's fees*

[¶12.] Appellees Larry and Ronald petitioned for attorney's fees under SDCL 29A-3-720, which provides that "[t]he court *may* also award necessary expenses and disbursements, including reasonable attorney's fees, to any person who prosecuted or defended an action that resulted in a substantial benefit to the estate." (Emphasis added.) The court denied Appellees' petition, finding that their actions did not benefit the estate. It noted that Marcelina was the one that produced the 2001 copy of the will and that Appellees had not done anything that resulted in a

substantial benefit to the Estate.  By notice of review, Appellees contend that the court erred by denying their petition.

[¶13.]     "Attorney's fees are awarded at the discretion of the circuit court." *Wagner v. Brownlee*, 2006 S.D. 38, ¶ 17, 713 N.W.2d 592, 598.  Therefore, we review the court's decision under the abuse of discretion standard.  Appellees contend that public policy dictates that an estate is benefited when genuine controversies as to the validity of a will are litigated and finally determined.  *See In re Estate of Laue*, 2010 S.D. 80, ¶ 43, 790 N.W.2d 765, 774.  They assert that if proponents of proper wills are burdened with costs of litigation, then those proponents will be discouraged from coming forward.  Although Appellees urge us to determine whether the Estate received a benefit or not, their arguments fail to recognize that attorney's fees are discretionary in this case, not mandatory.  Based on these facts, the circuit court did not abuse its discretion in determining that the Appellees' actions did not result in a substantial benefit to the Estate.  We affirm.

[¶14.]     Pursuant to SDCL 15-26A-87.3, Appellees have petitioned this Court for $4,506.25 appellate attorney's fees.  We deny their request.

[¶15.]     GILBERTSON, Chief Justice, and ZINTER, WILBUR, and KERN, Justices, concur.